1

2

3

4

5                   UNITED STATES DISTRICT COURT

6                   EASTERN DISTRICT OF WASHINGTON

7    STEPHANIE MATTHIESEN,

8                              Plaintiff,          NO:  2:15-CV-0080-TOR

9          v.                                      ORDER GRANTING DEFENDANT'S
                                                   MOTION FOR SUMMARY
10   AUTOZONERS, LLC,                              JUDGMENT

11                             Defendant.

12         BEFORE THE COURT is Defendant AutoZoners, LLC's Motion for

13   Summary Judgment and Memorandum of Points and Authorities in Support of

14   Motion (ECF No. 20).  This matter was heard with oral argument on April 15,

15   2016, in Spokane, Washington.  Corey M. Kane appeared on behalf of Plaintiff.

16   Shannon E. Phillips appeared on behalf of Defendant.  The Court has reviewed the

17   briefing, the record, and files therein; heard from counsel; and is fully informed.

18                              **BACKGROUND**

19         This case concerns the alleged sexual harassment and gender discrimination

20   Plaintiff Stephanie Matthiesen experienced at her former place of employment.  On

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

February 11, 2015, Matthiesen filed and served her Complaint in Chelan County Superior Court against Defendant AutoZoners, LLC ("AutoZone"), ECF No. 1-4 at 9-14, which AutoZone subsequently removed to this Court pursuant to this Court's diversity jurisdiction, ECF No. 1.  Matthiesen's Complaint asserts the following state law claims: sexual harassment, gender discrimination, wrongful discharge, intentional and negligent infliction of emotional distress, and negligent supervision and retention.  ECF No. 1-4 at 9-14.

In the instant motion, AutoZone moves for summary judgment on all claims. ECF No. 20.  In short, AutoZone contends the alleged harassing conduct consists of several rude comments by a co-worker made over the course of a few weeks, which isolated and trivial remarks do not meet the legal threshold necessary to prove a sexual harassment claim, nor can this co-worker's conduct be imputed to AutoZone.  And, rather than being compelled to leave her employment due to this allegedly abusive environment, Matthiesen voluntarily resigned.

## FACTS[1]

Matthiesen was employed at AutoZone from January 2, 2014, until June 23, 2014.  ECF Nos. 1-4 ¶¶ 2.1, 2.5 (Complaint); 21 ¶ 1 (AutoZone's Statement of Material Facts).  Matthiesen worked in the Wenatchee store as a commercial

---

[1] The following are the undisputed facts unless otherwise noted.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

specialist and reported to Jacob Norton, the Wenatchee store manager.[2]  ECF Nos. 21 ¶ 2; 21-1 at 6-7 (Matthiesen Deposition).  While she was employed at AutoZone, Matthiesen was the only female on her work crew.  ECF No. 25-1 at 29.

AutoZone's Store Handbook and Code of Conduct, which are distributed to all employees, contain policies regarding harassment and discrimination. ECF Nos. 21 ¶ 4; 21-1 at 11-12.  As part of these policies—on which AutoZone Employees are trained—employees are required to immediately report discriminatory or harassing conduct to management, Human Resources ("HR"), or AutoZone Relations. ECF Nos. 21 ¶ 9; 21-1 at 12-15.  AutoZone Relations maintains a confidential hotline, which allows employees to report harassment or other problems and is available 24 hours a day, 7 days a week.  ECF Nos. 21 ¶ 6; 21-3 ¶ 6.  The telephone numbers to both the hotline and the regional HR representative are posted in the Wenatchee store where Matthiesen worked.  ECF Nos. 21 ¶ 10; 21-1 at 13.

After working at AutoZone for about five and a half months, Matthiesen began experiencing problems with one of her co-workers, Josh Hudgens, a parts

---

[2] As store manager, Norton led day-to-day operations and other company initiatives within the store.  ECF No. 21-2 at 2-3.  Norton did not have independent authority to discharge employees.  *Id.* at 3.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

sales manager for the Wenatchee store.  ECF Nos. 21 ¶¶ 11-12; 21-1 at 16-17; *see* ECF No. 21-3 at 23 ("Over the past couple weeks I have had to deal with Josh talking to me in [demeaning] ways.").  For instance, Matthiesen claims that there was an incident where Matthiesen instructed Hudgens to take a lunch, and Hudgens did not take a lunch; the next day, Norton asked Matthiesen why she did not allow Hudgens to take a lunch.  ECF Nos. 21 ¶ 15; 21-1 at 43-44.  When Matthiesen explained to Norton that she *had* instructed Hudgens to take a lunch, Hudgens later asked Matthiesen if she thought she was "cool [by] throwing people under the bus [by] fucking lying" and told her she "wasn[']t shit."  ECF Nos. 21 ¶ 15; 21-1 at 45, 50.

Matthiesen continued to butt heads with Hudgens on a weekly basis.  ECF Nos. 21 ¶ 16; 21-1 at 26.  She would report Hudgens' behavior to Norton, which she did at least five times, and Norton would then speak to Hudgens, ECF No. 21-1 at 28; however, this approach would only result in Hudgens continuing to say "rude and inappropriate things," ECF No. 21-3 at 24;[3] seeking her out and yelling

---

[3] While Matthiesen's briefing asserts that Hudgens also made the comment, "You don't belong here," ECF No. 23 ¶ 6, Matthiesen's deposition states that Hudgens never actually made this comment, she just felt this way, being a woman in a man's field, ECF No. 21-1 at 47.

at her, ECF No. 21-1 at 42; and sometimes acting in an aggressive way, *id.* at 46-47.[4]

In June 2014, Hudgens and Matthiesen began competing for the position as commercial manager, which involved the two alternating weeks filling the position. ECF Nos. 21 ¶ 18; 21-1 at 20; *but see* ECF No. 21 ¶ 19 (doubting that AutoZone intended to give Matthiesen the position). Norton, in light of the fact that "things had been a little rough" between Hudgens and Matthiesen, advised both employees that this arrangement required them to get along. ECF Nos. 21 ¶ 19; 21-1 at 18-19.

At some point after this conversation, Hudgens told Matthiesen to "shut [her] f-ing mouth and make him a sandwich, get in the kitchen where [she] belong[s]," or something to that effect. ECF Nos. 21 ¶ 20; 21-1 at 21-22. When

---

[4] Matthiesen asserts that she reported to Norton at least five times that Hudgens was "sexually harassing and discriminating against her." ECF No. 23 ¶ 27. However, the cited testimony does not support this assertion. *See* ECF No. 21-1 at 28. Matthiesen does not otherwise support her conclusory statement with what "sexually harassing and discriminating" conduct she reported to Norton at least five times.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

Matthiesen told Hudgens he could not speak to her like that, Hudgens merely "laughed it off."  ECF Nos. 21 ¶ 21; 21-1 at 23.

Later that day, Hudgens and Matthiesen told Norton that they were not getting along, and the two met with Norton.  ECF Nos. 21 ¶ 22; 21-1 at 24.  During this meeting, after Norton again expressed the need for the two to get along and Matthiesen voiced her frustration with Hudgens,[5] Hudgens repeated to Matthiesen that "[she] needed to shut [her] fucking mouth and make him a sandwich."  ECF Nos. 21 ¶ 23; 21-1 at 25.  Matthiesen says Norton merely laughed at this comment, turned around, and went to his desk, ECF No. 21-1 at 25; Norton asserts that he did not hear this comment.  ECF No. 21-2 at 5 (Norton Declaration).[6]

---

[5] Specifically, Matthiesen says she "spoke up" and said the following: "That's fine, but we can't have one person doing it all. If he's going to participate, then he needs to be driving as well or helping with whatever else needs to be done."  ECF No. 21-1 at 25.

[6] Matthiesen sets forth several facts about other AutoZone female employees who experienced potential harassment from AutoZone's male employees. *See, e.g.*, ECF No. 23 ¶¶ 7-10.  However, these instances occurred *after* Matthiesen left AutoZone, *see id.* ¶ 7 (noting that Amelia Kelly was hired immediately after Matthiesen was terminated ), ¶ 10 (noting that another female employee had been

After this incident, Matthiesen never returned to work.  ECF Nos. 21 ¶ 30; 21-1 at 27.  On June 18 and 19, Matthiesen called in sick, citing "family things as well as health problems."  ECF Nos. 21 ¶ 31; 21-1 at 50.  On June 22, Matthiesen called to request a schedule change, indicating that she could not work alone around Josh anymore.  ECF Nos. 21 ¶ 32; 21-1 at 35, 42; *see* ECF No. 25-1 at 58 (explaining that she "needed somebody else there to be working with [her] to visually see what was going on").  Norton, after discussing the request with AutoZone's District Manager, informed Matthiesen that AutoZone would not be able to accommodate her request because doing so would be contrary to the company's policy requiring its full-time employees to have open availability.  ECF Nos. 21 ¶ 34; 21-1 at 41-42.  Matthiesen's job description expressly stated the following: "You will work a variety of shifts. We do not offer set schedules. You will usually have two days off each week, but these days will vary."  ECF No. 21-1 at 54.

---

hired shortly after Kelly quit), and have little relevance as to whether *she* experienced a hostile working environment or discrimination or whether a reasonable person in *her* shoes would have felt compelled to resign based on the present working conditions.

Because AutoZone could not accommodate her schedule request, Matthiesen was told it was in her "best interests" to resign.  ECF No. 21-2 at 42.  Matthiesen then told Norton she might have to resign, indicating that the situation was too uncomfortable.  ECF Nos. 21 ¶ 36; 21-1 at 38 ("Q. Okay. Why did you resign from AutoZone? A. The conflict that had been going on and the way that I was being treated. It was too much stress for me."); *see* ECF No. 21-3 at 25.  On June 23, 2014, Matthiesen called AutoZone's regional HR manager, Laureen Kilcrease, and told her about the sandwich incident and Hudgens' behavior more generally.  ECF Nos. 21 ¶ 37; 21-1 at 33.  Kilcrease told Matthiesen she would investigate the complaint and asked Matthiesen to submit something in writing, but indicated that Matthiesen would have to continue going to work during the investigation. ECF Nos. 21 ¶ 38; 21-1 at 34-35.

On June 25, 2014, Matthiesen submitted a written statement, explaining her issues with Hudgens and her decision to resign.  ECF Nos. 21 ¶¶ 38-39; 23 ¶ 39; *see* ECF No. 21-3 at 23-25 (Matthiesen Statement).  Diana Worley, an HR generalist assigned to investigate Matthiesen's complaint, ECF No. 25-1 at 93, subsequently interviewed Hudgens and Norton, but, at that point, Matthiesen had already resigned, ECF No. 23 ¶¶ 46-47.  Matthiesen never returned to work after the day in June when Hudgens told her to make a sandwich.  ECF No. 21-1 at 27.

Eight months later, Matthiesen filed suit against AutoZone.  ECF No. 1-4 at 9-14.

## DISCUSSION

### A. Standard of Review[7]

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position

---

[7] Despite Matthiesen's assertion that AutoZone presented "inapplicable Federal Summary Judgement (sic) standards from across the country, contrary to Matthiesen's asserted claims under the Washington Law Against Discrimination," ECF No. 24 at 7, the federal procedural law applies.  *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.").

will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248.  A dispute concerning any such fact is "genuine" only where the evidence is such that the trier-of-fact could find in favor of the non-moving party. *Id.*  "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and alterations omitted); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968) (holding that a party is only entitled to proceed to trial if it presents sufficient, probative evidence supporting the claimed factual dispute, rather than resting on mere allegations).  Moreover, "[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-

1  moving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007), and only evidence which

2  would be admissible at trial may be considered, *Orr v. Bank of Am., NT & SA*, 285

3  F.3d 764, 773 (9th Cir. 2002).  *See also Tolan v. Cotton*, 134 S. Ct. 1861, 1863

4  (2014) ("[I]n ruling on a motion for summary judgment, the evidence of the

5  nonmovant is to be believed, and all justifiable inferences are to be drawn in his

6  favor." (internal quotation marks and brackets omitted)).

7  **B. Hostile Work Environment Claim**

8  First, Matthiesen asserts a claim for hostile work environment, contending

9  that she was sexually harassed by a male employee while working for AutoZone.

10  ECF No. 1-4 at 10.

11  A cause of action exists under RCW 49.60 for sexual harassment. *Glasgow*

12  *v. Ga.-Pac. Corp.*, 103 Wash.2d 401, 404-05 (1985) ("[I]t is an unfair practice for

13  any employer to discriminate against any person in compensation or in other terms

14  or conditions of employment because of such person's sex." (alterations omitted)

15  (quoting RCW 49.60.180(3)).  Such claims come in two forms: "the quid pro quo

16  sexual harassment claim, where the employer requires sexual consideration from

17  the employee for job benefits, and the hostile work environment claim." *Antonius*

18  *v. King County*, 153 Wash.2d 256, 261 (2004).

19  At issue here, is Matthiesen's allegation of a hostile work environment.  To

20  establish a prima facie hostile work environment claim, a plaintiff must

1    demonstrate (1) unwelcome harassment; (2) that is attributable to the plaintiff's

2    membership in a protected class; (3) which affected the terms and conditions of the

3    plaintiff's employment; and (4) which can be imputed to the plaintiff's employer.

4    *Loeffelholz v. Univ. of Wash.*, 175 Wash.2d 264, 275 (2012).

5        Here, AutoZone contends that Matthiesen cannot establish a hostile work

6    environment claim because (1) none of her complaints about Hudgens were

7    because of sex; (2) the comments, which were isolated and only occurred a couple

8    times over the course of a few weeks, were not sufficiently severe or pervasive so

9    as to alter the terms of her employment; and (3) liability cannot be imputed to

10   AutoZone because she resigned before HR could investigate.  ECF No. 20 at 8-14.

11   In response, Matthiesen contends that (1) the comments made to her, which

12   involve gender stereotypes, were made because she is a woman; (2) the harassment

13   affected her employment because it caused her to be unable to work; and (3) the

14   harassment is imputed to AutoZone because the issue was brought to

15   management's attention and no reasonable steps were taken to address it.  ECF No.

16   24 at 16-19.

17       Even assuming Matthiesen is able to satisfy the first two elements of a prima

18   facie hostile work environment claim, this Court finds her claim fails on the final

19   two elements, as discussed below.

20   *//*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

1          **1.  Altered Conditions of Employment**

2          To satisfy the third element of a hostile work environment claim, a plaintiff

3     must show that the harassment was sufficiently severe or pervasive so as to alter

4     the conditions of her employment and create an abusive working environment.

5     *Loeffelholz*, 175 Wash.2d at 275.  "To determine whether conduct was severe or

6     pervasive enough to affect the terms and conditions of employment, we look at the

7     totality of the circumstances, including the frequency and severity of harassing

8     conduct, whether it was physically threatening or humiliating or merely an

9     offensive utterance, and whether it unreasonably interfered with the employee's

10    work performance."  *Davis v. Fred's Appliance, Inc.*, 171 Wash.App. 348, 362

11    (2012).  "Casual, isolated or trivial manifestations of a discriminatory environment

12    do not affect the terms or conditions of employment to a sufficiently significant

13    degree to violate the law."  *Id.* (quoting *Washington v. Boeing Co.*, 105 Wash.App.

14    1, 10 (2000)).

15          Here, this Court finds no reasonable jury could find the comments made to

16    Matthiesen were sufficiently severe or pervasive so as to alter the conditions of her

17    employment.  Over the course of one day, Hudgens twice told Matthiesen to "shut

18    [her] fucking mouth and make him a sandwich" and to "get in the kitchen where

19    [she] belong[s]," or some variation thereof.  ECF No. 21-1 at 25, 45.  While

20    Hudgens' comments, if made, were certainly offensive and embodied crude gender

stereotypes, they were isolated occurrences that are insufficient to create a hostile

work environment.  *See Boeing Co.*, 105 Wash.App. at 10-11 (holding that several

offensive but isolated comments did not unreasonably interfere with the plaintiff's

work environment); *Davis*, 171 Wash.App. at 362 (holding that three references to

employee by the name of television character "Big Gay Al" within one week was

insufficient to alter terms and conditions of employment).  Matthiesen's conclusory

allegation that Hudgens made other sexually harassing and discriminatory

comments is unsupported by the record, which merely shows that Hudgens would

say "rude and inappropriate" things to Matthiesen—for instance, his comment after

the lunch incident—and that such unpleasant interactions merely occurred on a

weekly basis over the course of a couple weeks.  ECF Nos. 21-1 at 26, 44-45; 21-3

at 23-25; *see also* ECF No. 25-1 at 61-62 ("Q. Okay. So other than the incident

relating to the sandwich, sort of the two incidents that day, and this issue relating to

whether or not you allowed Josh to take a lunch or whether Josh took a lunch, can

you give me any other specific examples of conduct that you believe was

harassing? A. I can't remember any more. Q. No other specific examples? A. I –

no.").  Accordingly, this Court finds a reasonable jury could reach but one

conclusion—that Hudgens' remarks were isolated, offensive remarks and not

sufficiently severe or pervasive to alter the conditions of Matthiesen's work

environment.

## 2.  Imputability of Harassment to the Employer

With regard to the fourth element of a hostile work environment claim, there are two categories of harassment which can be imputed to an employer.  *Davis*, 171 Wash.App. at 362.  In the first category is harassment committed by "an owner, partner, corporate officer, or manager."  *Id.*  To satisfy this category, "the manager's rank in the company's hierarchy must be high enough that the manger is the employer's alter ego."  *Id.*  Once established, this type of harassment is automatically imputed to the employer.  *Glasgow*, 103 Wash.2d at 407.  In the second category is harassment committed by lower-level supervisors and co-workers.  *Davis*, 171 Wash. App. at 362.  This latter type of harassment can be imputed to the employer only if the employer "(a) authorized, knew, or should have known of the harassment; and (b) failed to take reasonably prompt and adequate corrective action."  *DeWater v. State,* 130 Wash.2d 128, 135 (1996) (quoting *Glasgow*, 103 Wash.2d at 407). "This may be shown by proving (a) that complaints were made to the employer through higher managerial or supervisory personnel or by proving such a pervasiveness of sexual harassment at the workplace as to create an inference of the employer's knowledge or constructive knowledge of it and (b) that the employer's remedial action was not of such nature as to have been reasonably calculated to end the harassment."  *Id.* (quoting *Glasgow*, 103 Wash.2d at 407).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

1    This Court finds there is no genuine dispute that Hudgens' alleged

2    harassment is not imputable to AutoZone.

3        First, Hudgens' comments do not automatically impute to AutoZone.

4    Hudgens, the alleged harasser, was a parts sales manager at the Wenatchee store

5    and mere co-worker of Matthiesen.  ECF No. 21-2 ¶ 4.  Thus, his rank was not

6    sufficiently high enough in the company such that he was an "alter ego" of

7    AutoZone.  *See Davis*, 171 Wash.App. at 363.  Accordingly, his conduct does not

8    automatically impute to AutoZone.

9        Second, Matthiesen resigned before AutoZone was given the chance to

10   respond to her complaint and resolve the situation with Hudgens.  While

11   Matthiesen repeatedly reported her problems with Hudgens to Norton, the

12   Wenatchee store manager, ECF No. 21-1 at 28, there is nothing in the record—

13   besides Matthiesen's conclusory allegations, ECF No. 23 ¶ 27—that she was

14   reporting instances of sexual harassment or discriminatory remarks.  Specifically,

15   Matthiesen would tell Norton about Hudgens' "rude and mean" behavior, and

16   Norton would then follow-up with Hudgens.  ECF No. 21-1 at 42.  Importantly,

17   however, the alleged sexual harassment—the sandwich incident—did not occur

18   until mid-June 2014; prior to this time, there is nothing in the record to show that

19   the issues Matthiesen had with Hudgens were anything other than two employees

20   simply not getting along.  No reasonable jury could find that Matthiesen's

allegations that Hudgens made demeaning, rude, and inappropriate comments before the sandwich incident show sexual harassment of which AutoZone should have been aware, especially considering her deposition testimony. *See* ECF No. 21-1 at 28-29 (stating that she never told Norton she thought Hudgens was sexually harassing her or treating her disrespectfully because she is a woman); *see also id.* at 17 ("Q. Okay. When is the first time that you remember sort of butting heads with Josh? A. I don't remember the first time. . . . Q. Do you remember the nature of the conflict? A. No. Q. So you don't remember what he said or anything like that? A. No."); *see also* ECF No. 25-1 at 61-62 ("Q. Okay. So other than the incident relating to the sandwich, sort of the two incidents that day, and this issue relating to whether or not you allowed Josh to take a lunch or whether Josh took a lunch, can you give me any other specific examples of conduct that you believe was harassing? A. I can't remember any more. Q. No other specific examples? A. I – no.").

It was not until around mid-June 2014 that Hudgens allegedly made sexist comments to Matthiesen. After Hudgens twice told Matthiesen to "shut [her] fucking mouth and make him a sandwich," Matthiesen did not return to work. She called in sick on June 18 and 19, citing "family things as well as health problems." ECF No. 21-1 at 50. On June 22, 2014, Matthiesen called Norton requesting a schedule change and indicating that she needed Wednesdays off because she

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

1  "couldn't work alone around Josh anymore," which request was denied.  ECF No.

2  21-3 at 24.  On June 23, 2014, Matthiesen spoke with Kilcrease, AutoZone's

3  regional HR manager, "about problems [she] ha[d] been having at work with

4  another employee" and specifically mentioned the sandwich incident.  *Id.* at 23.

5  Kilcrease advised Matthiesen to submit a written statement and that she would

6  investigate the complaint, but informed Matthiesen she would have to continue

7  working while the investigation was pending.  ECF No. 21-1 at 34-35.  On June

8  25, 2014, Matthiesen submitted a written statement to HR about the problems she

9  had been having with Hudgens—including the sandwich incident he made to her—

10  and explaining her decision to resign.  ECF No. 21-3 at 23-25.  Matthiesen had not

11  previously called Kilcrease, AutoZone's regional HR manager, about Hudgens and

12  did not return to work thereafter.  ECF No. 21-1 at 33-34.

13      By the time the matter had been assigned to an HR representative for

14  investigation, Matthiesen had already decided to resign, having been denied her

15  schedule change request and having determined that the situation with Hudgens

16  was too uncomfortable.  Matthiesen cannot now assert that AutoZone failed to

17  promptly and adequately respond to her sexual harassment claim when she quit

18  before they had an opportunity to investigate the matter, verify Matthiesen's

19  allegations, and determine the best resolution for the issues between Hudgens and

20  Matthiesen.  Accordingly, even if Matthiesen could demonstrate the other elements

of a sexual harassment claim, her claim is not imputed to AutoZone.  AutoZone is

entitled to summary judgment.

### C. Wrongful Discharge

Matthiesen's second and third causes of action are claims for wrongful

discharge under Washington common law and wrongful discharge and retaliation

under the Washington Law Against Discrimination.  ECF No. 1-4 at 11.

As correctly asserted by Defendant, Matthiesen's claims, as pled, all require

proof that AutoZone wrongfully discharged Matthiesen.  However, because

Matthiesen resigned from her job—instead of AutoZone taking some affirmative

adverse employment action against her[8]—she must demonstrate as a threshold

matter that she was, in effect, forced to resign because of the working conditions.

---

[8] "An adverse employment action involves a change in employment conditions that

is more than an inconvenience or alteration of one's job responsibilities, such as

reducing an employee's workload and pay." *Alonso v. Qwest Commc'ns Co., LLC*,

178 Wash.App. 734, 746 (2013).  "A demotion or adverse transfer, or a hostile

work environment, may also amount to an adverse employment action." *Id.*

While Matthiesen makes repeated references to AutoZone's failure to promote her,

such a charge is not included in her Complaint and cannot be relied upon for

purposes of summary judgment.  *See Wasco Prods., Inc. v. Southwall Techs. Inc.*,

To prove constructive discharge, an employee must show that (1) the employer engaged in deliberate conduct which made the employee's working conditions intolerable; (2) a reasonable person in the employee's position would be forced to resign; (3) the employee resigned solely because of the intolerable conditions; and (4) the employee suffered damages. *Crownover v. State ex rel. Dep't of Transp.*, 165 Wash.App. 131, 149 (2011); *Allstot v. Edwards*, 116 Wash.App. 424, 433 (2003). Intolerable working conditions exist where an employee is subjected to "aggravating circumstances or a continuous pattern of discriminatory treatment" on the part of the employer. *Allstot*, 116 Wash.App. at 433. On the other hand, "[a]n employee's frustration, and even receipts of direct or indirect negative remarks, is not enough to show intolerable working conditions." *Crownover*, 165 Wash.App. at 149. "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Alonso*, 178 Wash.App. at 747.

Under Washington law, a court must "presume [the] resignation is voluntary and, thus, cannot give rise to a claim for constructive discharge." *Townsend v. Walla Walla Sch. Dist.*, 147 Wash.App. 620, 627 (2008). "A voluntary resignation occurs when an employee abandons the employment because of a desire to leave."

---

435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings." (citation omitted)).

1  *Crownover*, 165 Wash.App. at 149.  "A resignation will still be voluntary when an

2  employee resigns because he or she is dissatisfied with the working conditions."

3  *Id.*  The employee may rebut this presumption "by showing the resignation was

4  prompted by duress or an employer's oppressive actions."  *Townsend*, 147

5  Wash.App. at 627-28.  Mere subjective dissatisfaction, however, is insufficient to

6  overcome the presumption.  *Id.* at 628.

7         Here, AutoZone asserts that Matthiesen cannot show, based on several rude

8  comments over a couple weeks, that her working conditions were so intolerable

9  that a reasonable person would have felt compelled to resign.  ECF No. 20 at 14-

10  17.  In response, Matthiesen asserts that she was constructively discharged because

11  AutoZone failed to remedy or protect her from sexual harassment and

12  discrimination.  ECF No. 24 at 12.

13        Viewing the evidence in the light most favorable to Matthiesen, this Court

14  finds Matthiesen cannot survive summary judgment on any of her wrongful

15  discharge claims because she has failed to rebut the presumption that her

16  resignation was anything but voluntary.  While the comments allegedly made by

17  Hudgens were undoubtedly offensive, no reasonable person in the shoes of

18  Matthiesen would have found the conditions at the Wenatchee AutoZone store so

19  intolerable as to be compelled to resign.  Hudgens and Matthiesen clashed on a

20  weekly basis over the course of a couple weeks, and Hudgens' truly offensive

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21

1    remarks occurred on just one day, Matthiesen's final day of work.  While this

2    Court does not condone Hudgens' remarks, as alleged, his isolated remarks are

3    insufficient to create intolerable working conditions for purposes of a constructive

4    discharge claim.  *Boeing Co.*, 105 Wash. App. at 16 ("While the alleged negative

5    remarks about women and co-worker's refusal to assist her with certain tasks was

6    frustrating, they do not rise to the level of being so difficult or unpleasant that a

7    reasonable person in Washington's position would have felt compelled to resign.").

8         Moreover, even if Hudgens' conduct created intolerable working conditions,

9    his conduct cannot be imputed to AutoZone, as discussed in detail above. *See id.*

10   ("[B]ecause the harassment by co-workers cannot be imputed to Boeing, it cannot

11   be said that Boeing deliberately created the alleged intolerable working

12   conditions.").

13        Accordingly, AutoZone is entitled to summary judgment on all wrongful

14   discharge claims.

15   **D. Emotional Distress**

16        Matthiesen's fourth and seventh causes of action assert claims for intentional

17   and negligent infliction of emotional distress.  ECF No. 1-4 at 11-12.

18        **1.  Intentional**

19        To prevail on a claim for intentional infliction of emotional distress (also

20   known as "outrage"), a plaintiff must prove the following three elements: (1)

extreme and outrageous conduct; (2) intentional infliction of emotional distress; and (3) the actual result to the plaintiff of severe emotional distress. *Kloepfel v. Bokor*, 149 Wash.2d 192, 195 (2003) (citations omitted).  For purposes of the first element, the conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grimsby v. Samson*, 85 Wash.2d 52, 59 (1975).  In other words, the defendant's conduct must be so egregious that a "recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim 'Outrageous!'" *Kloepfel*, 149 Wash.2d at 196 (quotation and citation omitted).  Whether the defendant's conduct satisfies this standard is typically a question for the jury, "but it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability. *Dicomes v. State*, 113 Wash.2d 612, 630 (1989).

Here, AutoZone asserts that Matthiesen is unable to meet the high standard compelled by the tort of outrage.  ECF No. 20 at 20.  Matthiesen has failed to address this claim in her briefing.

This Court finds AutoZone is entitled to summary judgment on this claim as no reasonable jury could find in favor of Matthiesen.  While Hudgens' alleged statements are certainly offensive, Matthiesen resigned before AutoZone had the

opportunity to investigate Matthiesen's complaint and determine an appropriate

resolution.  Thus, to the extent Matthiesen is asserting that AutoZone's failure to

promptly respond and adequately address Matthiesen's complaint against Hudgens

caused her severe emotional distress, AutoZone's failure was not "so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." *Grimsby*, 85 Wash.2d at 59.  Accordingly, because reasonable minds

could not differ on whether AutoZone's conduct is sufficiently extreme to impose

liability under the tort of outrage, AutoZone is entitled to summary judgment on

this claim.

### 2.  Negligent

To prove negligent infliction of emotional distress, a plaintiff must

demonstrate that the emotional distress is "(1) within the scope of foreseeable harm

of the negligent conduct, (2) a reasonable reaction given the circumstances, and (3)

manifest by objective symptomatology." *Bylsma v. Burger King Corp.*, 176

Wash.2d 555, 560 (2013).  "The scope of foreseeable harm of a given type of

conduct depends on mixed considerations of logic, common sense, justice, policy,

and precedent." *Id.* at 561 (internal quotation marks and citation omitted).  "As

with any claim sounding in negligence, where a plaintiff brings suit based on

negligent infliction of emotional distress we test the plaintiff's negligence claim

against the established concepts of duty, breach, proximate cause, and damage or injury." *Snyder v. Med. Serv. Corp. of E. Wash*., 145 Wash.2d 233, 243 (2001) (internal quotation marks and citation omitted).  Washington courts have repeatedly noted the limited place negligent infliction of emotional distress claims have in the employment context.  As the Washington Supreme Court aptly stated, "[t]here is no duty for an employer to provide employees with a stress free workplace." *Id.*

Here, AutoZone asserts that Matthiesen has failed to demonstrate that AutoZone owed her a duty and subsequently breached that duty or offer any evidence to establish a medical diagnosis of emotional distress.  ECF No. 20 at 20-21.  Matthiesen has failed to address this claim in her briefing.

This Court finds AutoZone is entitled to summary judgment on this claim as no reasonable jury could find in favor of Matthiesen.  Dispositive here, Matthiesen has not demonstrated that her alleged emotional distress is manifested by objective symptoms or that her symptoms constitute a diagnosable emotional disorder. *Kloepfel*, 149 Wash.2d at 196-97.  Even her Complaint does not allege as much. *See* ECF No. 1-4 at 9-14.  Accordingly, Defendant is entitled to summary judgment on this claim.

//

//

### E. Negligent Retention and Supervision

Finally, Matthiesen's fifth and sixth causes of action assert common law claims for negligent supervision and negligent retention. ECF No. 1-4 at 12-13.

An employer owes a duty to foreseeable victims to prevent an employee from endangering others. "This duty gives rise to cause of action for negligent hiring, retention and supervision." *Niece v. Elmview Grp. Home*, 131 Wash.2d 39, 48 (1997). An employer is generally not liable, however, "unless the employer knew, or in the exercise of reasonable care should have known, that the employee presented a risk of danger to others." *Id.*; *see Steinbock v. Ferry Cty. Pub. Util. Dist. No. 1*, 165 Wash.App. 479, 490 (2011).

Here, AutoZone correctly asserts that Matthiesen has failed to offer any evidence demonstrating that she was subjected to a "risk of danger" while employed at AutoZone, ECF No. 20 at 21; Matthiesen has failed to respond to AutoZone's argument or otherwise address these claims in her briefing. Besides Matthiesen's single statement that Hudgens would "sometimes" act aggressively towards her and she felt threatened as a result, there is nothing in the record to show that Hudgens presented any risk of danger to anyone, including Matthiesen. And, even if Hudgens did pose a risk of danger, there is nothing in the record to show that AutoZone knew of this as Matthiesen points to no complaint to management or HR informing them of Hudgens' alleged dangerous behavior. *See*

*Smith v. Sacred Heart Med. Ctr.*, 144 Wash.App. 537, 544 (2008) (upholding

dismissal where plaintiff presented no evidence that employer had knowledge of

employee's propensity).  Accordingly, AutoZone is entitled to summary judgment

on this claim.

**ACCORDINGLY, IT IS ORDERED:**

1.  Defendant AutoZoners, LLC's Motion for Summary Judgment and

Memorandum of Points and Authorities in Support of Motion (ECF No. 20) is

**GRANTED.**

2.  All pending motions are **DENIED** as moot.  All remaining deadlines and

trial are **VACATED**.

3.  The District Court Executive is directed to enter this Order, enter

**JUDGMENT** for Defendant, provide copies to counsel, and **CLOSE** the file.

**DATED** April 18, 2016.



THOMAS O. RICE
United States District Judge